**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID A. TYLER and LOUIS J. RUCH, | : | No. 10-1239 |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Baylson, J.                                                    March 13, 2012

      The United States of America (the "Government") brought the instant action pursuant to 26 U.S.C. §§ 7401 and 7403 against Defendants David A. Tyler ("Mr. Tyler") and Louis J. Ruch ("Mr. Ruch," and together with Mr. Tyler, "Defendants"), individually and as co-executors of the respective estates of Mr. Tyler's late father and mother, David J. Tyler (the "Taxpayer") and Paula I. Tyler ("Mrs. Tyler"), to enforce a federal tax lien resulting from the Taxpayer's failure to pay income taxes for a period of years.  Presently before the Court are Defendants' Motion for Summary Judgment (ECF No. 24) and the Government's Cross-Motion for Summary Judgment (ECF No. 25.), each filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' Motion is DENIED and the Government's Cross-Motion is GRANTED.

## I.     Factual and Procedural Background

The following relevant facts are undisputed.[1]  On January 28, 2002, the Internal Revenue Service (the "IRS") assessed the Taxpayer with income tax liabilities for the years 1992 through 1998.  (Def. SUF ¶ 2; Pl. SUF ¶ 2.)   The Taxpayer failed to pay these liabilities.  (Pl. SUF ¶ 3.)

At the time the IRS made the assessments, the Taxpayer and his wife, Mrs. Tyler, owned real property located at 585 Cricket Lane in Radnor, Pennsylvania (the "Cricket Lane Property") as tenants by the entirety.  (Def. SUF ¶ 3.)  On August 20, 2003, the Taxpayer and Mrs. Tyler executed an indenture placing the Cricket Lane Property solely in the name of Mrs. Tyler for a stated consideration of $1.  (Def. SUF ¶ 4; Pl. SUF ¶ 4.)  On March 23, 2004, the IRS recorded a notice of federal tax lien reflecting a total of $436,349.09 in unpaid federal taxes with the Delaware County, Pennsylvania, Prothonotary in connection with the Cricket Lane Property. (Def. SUF ¶ 7; Pl. SUF ¶ 8.)

On or about August 15, 2006, the Taxpayer passed away.  (Def. SUF ¶ 9; Pl. SUF ¶ 10.) A formal estate was never submitted to probate for the Taxpayer.  (Def. SUF ¶¶ 13, 14.)  Close to a year later, on or about June 26, 2007, Mrs. Tyler passed way.  (Def. SUF ¶ 10; Pl. SUF ¶ 11.) Upon Mrs. Tyler's death, Defendants became co-executors of her estate, which was formally raised in the Orphan's Court Division of the Common Pleas of Delaware County.  (Def. SUF ¶¶ 15, 17.)

---

[1]The parties each submitted statements of material undisputed facts ("Pl. SUF" and "Def. SUF") for purposes of the instant Motions and responded to their opponent's statements of material undisputed facts. Statements which an opposing party "disputed" were deemed undisputed for purposes of these Motions if the party's explanation of the dispute was non-responsive or failed to reference supporting evidence in the record.  See Fed. R. Civ. P. 56(c), (e).

On September 11, 2007, the IRS sent letters to Defendants advising them that the federal tax lien encumbered the Cricket Lane Property and that, as co-executors of the estate of the Taxpayer and his wife, they were obligated to satisfy the lien out of the assets of the estate.  (Pl. SUF ¶ 13.)  Subsequently, Mr. Ruch filed an administrative appeal with the IRS challenging the federal tax lien.  (Pl. SUF ¶ 14.)  The IRS ultimately rejected the appeal.  (Id.)

On November 21, 2008, Defendants conveyed the Cricket Lane Property to Mr. Tyler for a stated consideration of $1.   (Def. SUF ¶ 20; Pl. SUF ¶ 16.)  Defendants did not seek the approval of the Orphan's Court to transfer the property.  (Def. SUF ¶ 22; Pl. SUF ¶ 23.)  Then, in July, 2009, Mr. Tyler sold the Cricket Lane Property to a third party purchaser for $525,019.48.  (Pl. SUF ¶ 19.)  The net proceeds of the sale totaled $313,206.94.  (Id.; David A. Tyler Deposition Transcript, Aug. 9, 2011 ("Tyler Depo. Tr."), at 22:8-23:2, 37:14-21.)  Mr. Tyler retained and invested the proceeds, which, in his own words, "pretty much got blown away in the market."  (Pl. SUF ¶ 24.)

Currently, Mrs. Tyler's estate remains open in the Orphan's Court.  (Def. SUF ¶ 17; Pl. SUF ¶ 21.)  There has not been a final accounting because the federal tax lien has yet to be resolved.  (Def. SUF ¶ 19; Pl. SUF ¶ 22.)

On March 22, 2010, the Government commenced the instant action by filing a Complaint (ECF No. 1) pursuant to 26 U.S.C. §§ 7401 and 7403 against Defendants, each in their individual capacity and as a co-executor of the respective estates of the Taxpayer and Mrs. Tyler, to enforce the federal tax lien.  On April 9, 2010, the Government filed an Amended Complaint (ECF No. 2).  The Amended Complaint seeks (1) to reduce to judgment the Taxpayer's federal tax assessments, (2) to set aside fraudulent conveyances of the Cricket Lane Property, (3) to

foreclose on the sale proceeds of the fraudulently conveyed property, and (4) to receive an accounting from Defendants regarding the estates of the Taxpayer and Mrs. Tyler.

Subsequently, Defendants moved to dismiss the Amended Complaint for lack of jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  On September 27, 2010, this Court issued a Memorandum and Order, denying Defendants' Motion to Dismiss.  United States v. Tyler, No. 10-CV-1239, 2010 WL 3769094 (E.D. Pa. Sept. 27, 2010).

Almost a year later, following discovery, on August 30, 2011, Defendants filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 24.)  On September 20, 2011, the Government filed a response in opposition thereto.  (ECF No. 27.)  Defendants did not file a reply.

The day after Defendants filed their Motion for Summary Judgment, the Government filed a Cross-Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 25.)  The Government's motion seeks the following relief only: (1) a declaration that the United States had a valid and subsisting lien on the Cricket Lane Property when Defendants, acting as co-executors of the estate of Mrs. Tyler, transferred the property to Mr. Tyler for $1, and (2) a judgment against both Defendants, jointly and severally, for one half the value of the proceeds of Mr. Tyler's subsequent sale of the property to a third party.[2]  On

---

[2]Notably, the relief sought in the Government's motion is narrower than that sought in the Amended Complaint.

September 21, 2011, Defendants filed a response in opposition to the Government's Cross-

Motion.  (ECF No. 28.)  The Government did not file a reply.[3]

## II.    Standard of Review

A court should grant a motion for summary judgment if the movant can show "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).[4]  A dispute is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under

the governing law."  Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial burden can be met simply by showing the court that "there is an absence of

evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325

---

[3]On March 1, 2011, the Court wrote the parties and requested that they submit letter
briefs on an issue that the Court believed relevant to resolution of the pending motions: Whether
the estate of Paula Tyler was rendered insolvent by the conveyance of the Cricket Lane Property
out of her estate to Mr. Tyler.  On March 8, 2011, the parties submitted their respective letter
briefs clarifying certain arguments addressing this issue that were originally made in their motion
papers.  (ECF Nos. 30, 31.)

[4]Because this civil action was pending when the Amendments to the Federal Rules of
Civil Procedure became effective on December 1, 2010, the Court references the amended
summary judgment standard in Rule 56(a) of the Federal Rules of Civil Procedure, which
substitutes "genuine dispute" for "genuine issue," the phrase in former subdivision (c).
According to the Rules Advisory Committee, the 2010 Amendments do not affect the substantive
standard for summary judgment or the applicability of prior decisions construing the standard.
Fed. R. Civ. P. 56 Advisory Committee's Note.  Pursuant to 28 U.S.C. § 2074(a) and the April
28, 2010 Supreme Court order, the amended rule governs all proceedings commenced on or after
December 1, 2010, and all proceedings then pending, "insofar as just and practicable." United
States Courts, Rules and Forms in Effect: Rules and Forms Amendments Effective 12/1/10,
http://www.uscourts.gov/Rule
sAndPolicies/FederalRulemaking/Overview/RulesForms120110.aspx (last visited Apr. 5, 2011).

(1986).  The party opposing summary judgment must rebut by making a factual showing

"sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Id. at 322.  The court may grant summary judgment

"[i]f the evidence is merely colorable, or is not significantly probative."  Anderson, 477 U.S. at

249 (citations omitted).  The court must view the evidence in the light most favorable to the

non-moving party and draw all justifiable inferences in favor of the non-movant.  Id. at 255

(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

III.    **Discussion**

    A.      **The Probate Exception to Federal Jurisdiction Does Not Apply**

        As an initial matter, Defendants contend that the probate exception to federal subject

matter jurisdiction divests this Court of jurisdiction that it otherwise has over the instant action

pursuant to 28 U.S.C. § 1340, 28 U.S.C. § 1345, 26 U.S.C. § 7402, and 26 U.S.C. § 7403.[5]  The

Court disagrees.

        The probate exception is a judicially-created jurisdictional limitation on the federal

courts.  Three Keys Ltd. v. SR Util. Holding Co., 540 F.3d 220, 226 (3d Cir. 2008).  The

Supreme Court has recognized that it is a "narrow exception" of  "distinctly limited scope."

Marshall v. Marshall, 547 U.S. 293, 305, 310 (2006).

        "[T]he probate exception reserves to state probate courts the probate or annulment of a

will and the administration of a decedent's estate; it also precludes federal courts from

endeavoring to dispose of property that is in the custody of a state probate court."  Id. at 311-12.

_____

        [5]Defendants do not dispute that the Court has jurisdiction over the instant action under the
statutes referenced above if the probate exception does not apply.

However, "it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Id.  Therefore, "unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." Three Keys, 540 F.3d at 227.

The Court need not decide whether any of the foregoing three prohibitions applies in this case because, as a threshold matter, the exception does not cover the instant action for several reasons.  First, neither the Supreme Court nor the Third Circuit has ever determined that there exists any uncodified probate exception to a federal court's jurisdiction over an enforcement action under the Internal Revenue Code.  Cf. Marshall, 547 U.S. at 308-09 (declining to consider "whether there exists any uncodified probate exception to federal bankruptcy jurisdiction").  Nor is the Court aware of any district court case within the Third Circuit that has done so.

Second, it is unclear if the probate exception even applies to federal question cases.  To be sure, the courts of appeals are currently split on this very question.  Compare Jones v. Brennan, 465 F.3d 304, 306-09 (7th Cir. 2006) (probate exception applicable to both federal question and diversity cases); Tonti v. Petropoulous, 656 F.2d 212, 215-16 (6th Cir.  1981) (same), with In re Goerg, 844 F.2d 1562, 1565 (11th Cir. 1988) (probate exception applicable only to diversity cases).[6]  Although the Third Circuit has never addressed the issue, it has repeatedly described the probate exception as an "exception to diversity jurisdiction," see Three

---

[6] The Ninth Circuit also determined that the probate exception applies to both federal question and diversity cases.  In re Marshall, 392 F.3d 1118, 1131-32 (9th Cir. 2004).  The Supreme Court subsequently reversed the Ninth Circuit on other grounds and, as noted above, declined to consider "whether there exists any uncodified probate exception to federal bankruptcy jurisdiction."  Marshall v. Marshall, 547 U.S. 293, 308-09 (2006).

Keys, 540 F.3d at 222, 226, 227; Golden ex. rel. Golden v. Golden, 382 F.3d 348, 352, 354, 357 (3d Cir. 2004); Marshall v. Lauriault, 372 F.3d 175, 179-82 (3d Cir. 2004); Moore v. Graybeal, 843 F.2d 706, 709 (3d Cir. 1988), and has determined that the domestic relations exception – a judicially-created jurisdictional limitation that is closely related to the probate exception – does not apply in federal question cases, see Flood v. Braaten, 727 F.2d 303, 307 (3d Cir. 1984) ("[T]he domestic relations exception per se applies only to actions in diversity.").[7]

Moreover, as the Supreme Court recently made clear, "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction." Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 748-49 (2012).  "That principle endures unless Congress divests federal courts of their [] adjudicatory authority." Id. at 749.  Though older Supreme Court precedent arguably implies that the probate exception applies in at least in some federal question cases, see Markham v. Allen, 326 U.S. 490 (1946) (applying probate exception to action brought under Trading with the Enemy Act), recognizing an uncodified exception to a federal court's jurisdiction over an enforcement action under the Internal Revenue Code would render meaningless the Supreme Court's more recent jurisdictional directive.

And third, "no sound policy considerations militate in favor of extending the probate exception to cover the case at hand" because state probate courts possess "no special proficiency . . . in handling [substantive federal tax] issues." Marshall, 547 U.S. at 312 (quoting Ankenbrandt v. Richards, 504 U.S. 689, 703-04 (1992)) (internal quotations omitted).  To the

---

[7]The Supreme Court has described the probate exception as "kin to the domestic relations exception" because both are judicially-created jurisdictional limitations derived from language contained in the Judiciary Act of 1789.  Marshall, 547 U.S. at 308.

contrary, federal courts do.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545

U.S. 308, 315 (2005) ("The meaning of the federal tax provision is an important issue of federal

law that sensibly belongs in a federal court.").  Indeed, Congress has devised a complex system

specifically for federal courts to resolve such issues.  See Hinck v. United States, 550 U.S. 501,

509 (2007) (noting that Congress split jurisdiction among federal district courts and federal tax

courts over questions of substantive tax law and administrative operations).  Thus, a federal court

is far better suited to resolve an issue relating to the enforcement of a federal tax lien than a state

probate court.

 Accordingly, the Court rejects Defendants' contention that the probate exception divests

this Court subject matter jurisdiction over the instant action.  Therefore, the Court will address

the parties' arguments on the merits.

### B. The Federal Tax Lien Continued to Encumber the Cricket Lane Property When Defendants Transferred the Property Out of Mrs. Tyler's Estate

 The parties dispute whether the federal tax lien resulting from the Taxpayer's failure to

pay his income taxes continued to encumber the Cricket Lane Property when Defendants, while

acting as co-executors of the estate of Paula Tyler, transferred the property out of her estate to

Mr. Tyler for $1.  The federal tax lien statute, 26 U.S.C. § 6321, provides:  "If any person liable

to pay any tax neglects or refuses to pay the same after demand, the amount (including any

interest, additional amount, addition to tax, or assessable penalty, together with any costs that

may accrue in addition thereto) shall be a lien in favor of the United States upon all property and

rights to property, whether real or personal, belonging to such person."  Id. (emphasis added).

Thus, "[t]he threshold question in . . . all cases where the Federal Government asserts its tax lien[

] is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach."  Aquilino v. United States, 363 U.S. 509, 512 (1960).

As the Supreme Court made clear in United States v. Craft, 535 U.S. 274 (2002), whether the interests of a taxpayer in "property he held as a tenant by the entirety constitutes 'property and rights to property' for the purposes of the federal tax lien statute . . . is ultimately a question of federal law."  Id. at 278.  However, the answer to this federal question "largely depends on state law."  Id.

In Craft, the Supreme Court held that a federal tax lien resulting from unpaid taxes attributable to one tenant by the entireties attaches to that tenant's interest in entireties property. Id. at 283.  Although Craft involved a tenancy by the entireties under Michigan law, the Third Circuit subsequently reached the same conclusion with respect to a tenancy by the entireties under Pennsylvania law in United States v. Popky, 419 F.3d 242, 244 (3d Cir. 2005).   There, the Third Circuit also determined that the interests of respective tenants by the entireties are valued equally at 50%.  Id. at 245.

Though instructive, neither Craft nor Popky directly controls the outcome of this case. Here, Defendants do not dispute that the federal tax lien initially encumbered a one-half interest in the Cricket Lane Property.  Rather, Defendants contend that the federal tax lien ceased to encumber the property prior to Defendants' transfer of the property out of Mrs. Tyler's estate for two principal reasons.  First, Defendants contend that the Taxpayer's one-half interest in the property was extinguished by operation of law upon the death of the Taxpayer.  And second, Defendants contend that, even if the death of the Taxpayer did not extinguish the federal tax lien,

it is still unenforceable because Mrs. Tyler was a "purchaser" within the meaning of 26 U.S.C. §

6323.  The Court rejects both these contentions.

### 1.      The Death of the Taxpayer Did Not Extinguish the Federal Tax Lien

A federal tax lien "shall continue until the liability for the amount so assessed . . . is

satisfied or becomes unenforceable by reason of lapse of time."  26 U.S.C. § 6322.  Therefore, as

a general matter, "the transfer of property subsequent to the attachment of the lien does not affect

the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the

property goes, it passes <u>cum</u> <u>onere</u> . . . .'"  <u>United States v. Avila</u>, 88 F.3d 229, 233 (3d Cir.

1996) (quoting <u>United States v. Bess</u>, 357 U.S. 51, 57 (1958) (quoting <u>Burton v. Smith</u>, 38 U.S.

464, 483 (1839)))); <u>accord</u> <u>Moco Inv., Inc. v. United States</u>, 362 F. App'x 305, 308 (3d Cir.

2010) (same).

Following <u>Craft</u>, the IRS issued IRS Notice 2003-60, 2003-39 I.R.B. 643, 2003 WL

22100950 (2003), to provide guidance as to the application of <u>Craft</u> to various collection issues,

including the effect of a taxpayer's death on a federal tax lien encumbering a tenancy by the

entireties.  Specifically, the notice provides that "if a taxpayer's interest in entireties property is

extinguished by operation of law at the death of the taxpayer, then there is no longer an interest

of the taxpayer to which the federal tax lien attaches . . . [and] the surviving non-liable spouse

takes the property unencumbered by the federal tax lien."  <u>Id.</u>  However, "[t]he rule that the

federal tax lien does not survive the death of the taxpayer does not apply if the entireties estate

previously has been terminated."  <u>Id.</u>   "For example, if the property has been conveyed to a third

party, the federal tax lien will be deemed to encumber a one-half interest in the hands of the

transferee and will not be affected by the subsequent death of either spouse."  <u>Id.</u>

Thus, the relevant question in this case is whether the entireties estate, in which the Taxpayer held a one half interest, terminated upon the conveyance of the Cricket Lane Property to his wife prior to his death.  If the entireties estate did not terminate at that time, then the Taxpayer's interest in the Cricket Lane Property would have been extinguished by operation of law upon his death.   But if the entireties estate did terminate upon the conveyance of the Cricket Lane Property to his wife, then the federal tax lien would have continued to encumber a one-half interest in the property and been unaffected by the death of the Taxpayer, insofar as Paula Tyler was not a "purchaser" under 26 U.S.C. § 6323, as discussed more fully below.

Under Pennsylvania law, a tenant by the entireties cannot alienate the entireties property without the other tenant's consent.  However, a tenancy by the entireties may be severed by "a joint conveyance of the estate." Clingerman v. Sadowski, 519 A.2d 378, 382 (Pa. 1986); see also Stop 35, Inc. v. Haines, 543 A.2d 1133, 1136 (Pa. Super. Ct. 1988) (suggesting that a valid deed transferring title in entireties property from husband and wife to wife alone severs tenancy by the entireties).

In this case, the indenture at issue leave no question that the Taxpayer and his wife intended to sever the entireties estate.  See United States v. Klimek, 952 F. Supp. 1100, 1116-17 (E.D. Pa. 1997) ("[I]ntention is the cardinal and controlling element and if it is the intention of the parties to create an estate other than by the entireties, such intention will be given effect." (quoting High v. Balun, 943 F.2d 323, 325 (3d Cir. 1991) (quoting Brenner v. Sukenik, 189 A.2d 246, 249 (Pa. 1963)))).  Indeed, the indenture explicitly transferred the Cricket Lane Property from "David J. Tyler and Paula I. Tyler, h/w," as Grantors, to "Paula I. Tyler," as the lone Grantee, for a stated consideration of $1.  (Gov't Mot., Exh. 2, ECF No. 25-2.)  The indenture

12

further specifies that the conveyance was a "tax exempt transfer from husband and wife to wife." (Id.)  Both the Taxpayer and his wife signed the indenture.  (Id.)

The Court rejects Defendants' contention that, despite the clear terms of the indenture, the Taxpayer and his wife actually intended the entireties estate to continue.  The only evidence Defendants offer in support of their position is deposition testimony given by David Tyler that he was not aware that the property was put in his mother's name alone and that, after being shown the indenture, he believed that the transfer was for the sake of convenience.  (Tyler Depo. Tr. at 8:11-14; 9:7-21.)  Not only did David Tyler lack knowledge of the conveyance until he was shown the indenture, his testimony is irrelevant in the absence of any contention that the conveyance was fraudulent, accidental or done by mistake.  See  Mackall v. Fleagle, 801 A.2d 577, 581 (Pa. Super. Ct. 2002) ("[T]he nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake." (quoting Lawson v. Simonson, 417 A.2d 155, 158 (Pa. 1980))).  Defendants make no such claim.

Moreover, the Court rejects Defendants' contention that the Taxpayer lacked mental competency to execute the indenture as a result of suffering a stroke years earlier.  Again, the only evidence Defendants offer in support of their position is deposition testimony given by Mr. Tyler that he believed his father would have been unable to sign his name to the indenture and make a decision regarding the transfer of the house because the stroke left him "totally incapacitated."  (Tyler Depo. Tr. at 12:11-22, 36:9-13, 36:16-37:2, 38:16-39:19, 40:2-10.)  This testimony amounts to nothing more than mere speculation by hindsight.  Defendants offer no evidence concerning the precise mental condition of the Taxpayer on the date he and his wife

13

executed the indenture placing the Cricket Lane Property in her name alone.  See Weir by Gaspar v. Estate of Ciao, 556 A.2d 819, 824 (Pa. 1989) ("When mental competency is at issue the real question is the condition of the person at the very time he . . . executed the instrument.").  Absent such a showing, Defendants have not met their burden to demonstrate that David Tyler's father was incompetent at the relevant time in question.  See id. ("Ordinarily, competence is presumed and the burden of proof is upon the person who alleges the incompetence.").

Accordingly, the entireties estate terminated upon the transfer of the Cricket Lane Property to Paula Tyler.  Therefore, the death of the Taxpayer did not extinguish his one-half interest in the property or the federal tax lien encumbering it.

### 2.        Paula Tyler Was Not a "Purchaser" Under 26 U.S.C. § 6323

An exception to the general rule that a federal tax lien continues unabated regardless of sale appears in 26 U.S.C. § 6323, which provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser . . . until notice thereof . . . has been filed by the Secretary." Id. § 6323(a) (emphasis added).  The term "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice."  Id. § 6323(h)(6) (emphasis added).

By regulation, the IRS has interpreted the term "adequate and full consideration in money or money's worth" to mean "a consideration in money or money's worth having a reasonable relationship to the true value of the interest in property acquired."  26 C.F.R. § 301.6323(h)-1(f)(3).  The IRS has further interpreted the term "money or money's worth" to mean "money, a

security . . . , tangible or intangible property, services, and other consideration reducible to a money value."  26 C.F.R. § 301.6323(h)-1(a)(3).

Defendants bear the burden of proving that Paula Tyler was a "purchaser" within the meaning of Section 6323.  United States v. McCullough, No. 10-CV-1507, 2011 WL 4737412, at *3 (W.D. Pa. Oct. 6, 2011) ("A party seeking the protection of Section 6232 [sic] bears the burden of proving his entitlement to the protection of that Section." (citing Resolution Trust Corp. v. Gill, 960 F.2d 336, 344 (3d Cir. 1992))); Taylor v. I.R.S., No. 94-CV-5457, 1997 WL 424461, at *2 (E.D. Pa. May 8, 1997) ("Plaintiff bears the burden of proving that she fits the statutory definition of 'purchaser.'").

As the indenture expressly provides, the Cricket Lane Property was conveyed to Mrs. Tyler for $1.  Numerous district courts in the Third Circuit have determined that $1 does not constitute "adequate and full consideration in money or money's worth" under Section 6323. See, e.g., McCullough, 2011 WL 4737412, at *3; I.R.S. v. Larsen, No. 95-CV-326, 1997 WL 759621, at *3 (W.D. Pa. Oct. 20, 1997); United States v. DiLouie, No. 93-CV-6010, 1995 WL 422738, at *2 (E.D. Pa. July 17, 1995); United States v. Carson, 741 F. Supp. 92, 95 (E.D. Pa. 1990).

Nevertheless, Defendants contend that the sale of the Cricket Lane Property was supported by adequate consideration because in addition to paying $1 for the property, Paula Tyler became solely responsible for the mortgage, state and local taxes, and required renovations of the property.  In support of this contention, however, Defendants merely point to deposition testimony given by Mr. Tyler explaining that the third party to whom he sold the property after his mother's death required him to pay off the mortgage and make renovations before the third

15

party would purchase it.  (Tyler Depo. Tr. at 37:22-25, 38:1-8.)  This testimony has nothing to do with whether Mrs. Tyler's purchase of the property was supported by adequate consideration. Moreover, Defendants do not point to anything in the record establishing the existence or extent of any obligations purportedly undertaken by Mrs. Tyler in exchange for the property.

Accordingly, Paula Tyler was not a "purchaser" within the meaning of Section 6323. Therefore, the federal tax lien continued to encumber the Cricket Lane Property when Defendants transferred the property to Mr. Tyler following the deaths of his parents.

### C.     The Government Has Complied with the Requisite Collection Procedures

Next, the parties dispute whether the Government complied with the requisite collection procedures before instituting the instant action against Defendants.  Specifically, Defendants contend that the Government failed to timely make valid assessments of the Taxpayer's federal tax liabilities and was required to assess Paula Tyler with the same before proceeding against Defendants as fiduciaries.  The Court disagrees.

First, the Court rejects Defendants' contention that the Government's assessments of the Taxpayer's federal tax liabilities were untimely.  Generally, tax liabilities "shall be assessed within 3 years after the return was filed."  26 U.S.C. § 6501(a).  In this case, the Taxpayer did not file tax returns for the years 1992 through 1998 until 2000 and 2001.  Therefore, the Government's assessment of tax liabilities for those years in 2002 was within 3 years after his returns were filed.

Second, the Court rejects Defendants' contention that the Government's assessments of the Taxpayer's federal tax liabilities are invalid.  The Government has filed a certified copy of account transcripts detailing the Taxpayer's assessments.  Defendants bear the burden of

16

demonstrating that these assessments are incorrect.  See United States v. Carson, 741 F. Supp. 92, 94 (E.D. Pa. 1990) ("The Certificate of Assessments and Payments establishes a presumption that the assessments are valid, and shifts the burdens of production and persuasion to the defendant taxpayer to show that the assessments are incorrect." (citing Psaty v. United States, 442 F.2d 1154, 1158-60 (3d Cir. 1971))).  They have not so much as attempted to do so.

And third, the Court rejects Defendants' contention that the Government was required to assess Paul Tyler with tax liabilities in connection with the federal tax lien on the Cricket Lane Property resulting from her husband's failure to pay taxes.  An assessment against a transferee of property encumbered by a federal tax lien is not a prerequisite to maintain a collection action against a fiduciary.  United States v. Geniviva, No. 92-CV-1045, 1993 WL 597442, at *2 (W.D. Pa. Apr. 14, 1993) ("[T]he Government clearly may maintain an action in law against a fiduciary without resort to the collection procedures provided in § 6901."), aff'd 16 F.3d 522 (3d Cir. 1994); accord United States v. Russell, 461 F.2d 605, 607 (10th Cir. 1972) (collecting cases).  Thus, the Government was free to proceed against Defendants without first assessing Paula Tyler with federal tax liabilities.

Accordingly, the Government has complied with the necessary collection procedures prior to bringing the instant action against Defendants.

### D.    Defendants Are Liable as Fiduciaries of the Taxpayer's Estate

Finally, notwithstanding the foregoing, the parties dispute whether Defendants can be held liable for transferring the Cricket Lane Property out of the estate of Paula Tyler without first satisfying the federal tax lien.  The Government has advanced three alternative theories of liability in this case: (1) that Defendants are liable as fiduciaries of the estate of the Taxpayer, (2)

17

that Defendants are liable as fiduciaries of the estate of Mrs. Tyler, and (3) that Defendants are

liable for common law lien conversion.  Because the Court finds that Defendants are liable as

fiduciaries of the estate of the Taxpayer, it is unnecessary to address whether Defendants are also

liable under any alternative theory of liability advanced by the Government.

Personal liability may be imposed upon a fiduciary of an estate in accordance with the

federal priority statute, 31 U.S.C. § 3713(b).  26 U.S.C. § 6901(a)(1)(B).  Under the federal

priority statute, a fiduciary "paying any part of a debt of . . . [an] estate before paying a claim of

the Government is liable to the extent of the payment for unpaid claims of the Government." 31 §

3713(b).  "Personal liability can attach, to the extent of the distribution, if the government

establishes three elements: (1) the fiduciary distributed assets of the estate; (2) the distribution

rendered the estate insolvent; and (3) the distribution took place after the fiduciary had actual or

constructive knowledge of the liability for unpaid taxes."  9 Merten's Law of Fed. Income

Taxation § 36:189 (2011); see also United States v. Coppola, 85 F.3d 1015, 1019-21 (2d Cir.

1996) (holding executor personally liable under § 3713(b) for rendering estate insolvent by

distributing estate assets to family members before satisfying federal tax debt); Huddleston v.

Comm'r, 67 T.C.M. (CCH) 2521, 1994 WL 100520, at *5-*8 (1994) (holding executor

personally liable under § 3713(b) for rendering estate insolvent by converting estate assets for his

own use before satisfying federal tax debt).

In this case, the Government has established each of the requisite elements under the

federal priority statute to hold Defendants liable as fiduciaries of the estate of the Taxpayer.

First, Defendants conveyed the Cricket Lane Property to Mr. Tyler, who in turn sold the property

to a third party purchaser, without first satisfying the tax lien that continued to encumber the Taxpayer's one-half interest in the property.

Second, Defendants' conveyance of the Cricket Lane Property rendered the Taxpayer's estate insolvent.  The Government asserts that the Taxpayer had no other assets that could have been used to satisfy the tax lien.  In response, Defendants contend that the Taxpayer had a car that could have been sold to satisfy the tax lien.  Notably, however, Defendants offer no evidence that the proceeds from the sale of the car would have been sufficient to fully satisfy the tax lien. In fact, at his deposition, Mr. Tyler testified that his father's car could have been worth a few thousand dollars and that he did not know if his father even owned the car or merely leased it. (Tyler Depo. Tr. at 29:19-30:6.)   The Cricket Lane Property was thus the Taxpayer's only asset that could have satisfied, at least in part, the federal tax lien.  Accordingly, because Defendants' conveyance of the property depleted the Taxpayer's estate of assets capable of satisfying the tax lien, the transfer rendered the Taxpayer's estate insolvent for purposes of the federal priority statute.  See United States v. State of Oklahoma, 261 U.S. 253, 261 (1923) (defining insolvency under the predecessor statute to the current federal priority statute as a situation when a debtor's liabilities exceed its assets).

And third, Defendants' conveyance of the Cricket Lane Property took place after they had actual knowledge of the federal tax lien.  Indeed, prior to the transfer, the IRS sent letters to Defendants advising them that the federal tax lien encumbered the Cricket Lane Property and that they were obligated to satisfy it.  Subsequently, Mr. Ruch even filed an administrative appeal with the IRS challenging the lien.  There is, thus, no question that Defendants transferred the

property with full knowledge of the existence of the lien.  Whether they believed the tax lien was enforceable is irrelevant to the issue of notice under the federal priority statute.

The Court rejects Defendants' contention that they cannot be held liable as fiduciaries of the Taxpayer's estate because an estate was never technically raised in the Orphan's Court for the Taxpayer.  Defendants do not cite – nor is the Court aware of – any case requiring that a formal estate be raised in accordance with state law for a fiduciary to be held liable for the tax debts of a decedent under the federal priority statute.  Moreover, the Supreme Court's repeated directive that the terms of the federal priority statute be interpreted liberally to further its purpose of securing adequate revenue for the Government dispels any such limiting construction of the statute.  See, e.g., United States v. Moore, 423 U.S. 77, 81-82 (1975); United States v. Key, 397 U.S. 322, 324 (1970); Bramwell v. U.S. Fid. & Guar. Co., 269 U.S. 483, 487 (1926).

As discussed above, the Taxpayer's one-half interest in the Cricket Lane Property was not extinguished upon his death because the entireties estate had previously been severed. Defendants were entrusted with that property upon the death of Mrs. Tyler and, thus, had the corresponding obligation to satisfy the federal tax lien encumbering the Taxpayer's one-half interest in the property before conveying it.

Accordingly, Defendants are liable as fiduciaries of the estate of the Taxpayer under the federal priority statute.

## IV.    Conclusion

The Court has carefully considered Defendants' contentions and the legal principles governing this case.  Defendants claims are contrary to law.  Furthermore, Defendants are plainly

20

trying to avoid or evade paying taxes that are due and owing, and they deserve no exception to the tax laws that bind us all.

For the reasons set forth above, Defendants' Motion for Summary Judgment is DENIED and the Government's Cross-Motion for Summary Judgment is GRANTED.  An appropriate order follows.

O:\CIVIL 09-10\10-1239 United States v. Tyler\Memo re MSJ.wpd